IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. LAKSHMI ARUNACHALAM,

Plaintiff,

v.

KRONOS INCORPORATED,

Defendant.

Civil Action No. 14-cv-00091-RGA

MEMORANDUM

Before me is Defendant's renewed motion to dismiss Count III pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 97). Briefing is complete. (D.I. 98, 100, 102).[1] For the following reasons, Defendant's motion to dismiss is granted with prejudice.

I.  BACKGROUND

Pi-Net International, Inc. (Pi-Net) filed a complaint against Defendant Kronos on January 22, 2014 alleging infringement of U.S. Patents Nos. 9,587,500 (the "'500 patent"); 8,108,492 (the "'492 patent"); 8,244,833 (the "'833 patent"); and 8,346,894 (the "'894 patent"). (D.I. 1). Kronos filed a motion to dismiss pursuant to Rule 12(b)(6) based on alleged invalidity of the patents under 35 U.S.C § 101. (D.I. 6 at 1). Thereafter, the parties agreed to stay the action until resolution of the pending appeal in *Pi-Net Int'l, Inc. v. JP Morgan Chase & Co.*, C.A. No. 12-cv-282 (D. Del.). (D.I. 14, 16). On March 18, 2015, the Court permitted Dr. Lakshmi Arunachalam to substitute for Pi-Net as Plaintiff. (D.I. 50). Three of the four patents at issue, the '500 patent, the '492 patent, and the '894 patent, were subsequently invalidated in whole or in part in various

---

[1] Plaintiff's brief (D.I. 100) has twenty pages of text, but the first thirteen pages have no relevance for a district court that must follow precedent.

proceedings. (*See* D.I. 71). On June 18, 2020, the Court unstayed the case and dismissed Counts 1, 2, and 4, which asserted infringement of the '500, '492, and '894 patents, either because the claims had been declared to be invalid or because they could no longer be pursued due to collateral estoppel. (D.I. 93, 94). Count III, which alleges infringement of "at least claim 10" of the '833 patent, is the only unresolved count remaining in this action. The Court must now consider Defendant's renewed motion to dismiss.

## II.     LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting the well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "[I]t is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction."[2] *Genetic Technologies Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted).

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, there are "recognized limits to § 101 and every discovery is not embraced within the statutory terms. Excluded from such patent protection are laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). There is a two-step analysis for determining

---

[2] Even though Plaintiff refers to the importance of claim construction (D.I. 100 at 14, 16), she does not suggest any particular claim constructions that would make any difference to the pending motion. Nor does she suggest even more generally some idea of a claim construction that would make any difference.

whether a claim is patent eligible: "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  If so, the second step is to "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (quotation marks and citation omitted) (alteration in original).

"[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 223.  "[T]he use of a computer in an otherwise patent-ineligible process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes." *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).  "That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).  Further, "adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).  Indeed, "merely configuring generic computers in order to supplant and enhance an otherwise abstract manual process is precisely the sort of invention that the *Alice* Court deemed ineligible for patenting." *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) (quotation marks and citation omitted).  Process claims executed on a computer are directed to an abstract idea in the absence of a "particular assertedly inventive technology for performing [conventional] functions." *Elec. Power Grp, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

"For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (citing *Alice*, 573 U.S. at 225). However, "inventions which are directed to improvements in the functioning and operation of the computer are patent eligible." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018). "[T]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Alice*, 573 U.S. at 224. "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment. . . ." *Bilski v. Kappos*, 561 U.S. 593, 610 (2010) (quotation marks and citation omitted).

### III.     DISCUSSION

Claim 10 of the '833 Patent reads:

> 10. A non-transitory machine-readable medium having embedded thereon machine executable instructions executable by one or more processors, said instructions, when executed by one or more processors, causing the one or more processors to perform a set of steps including:
>    activate an OSI application layer on-line service network on the Web, wherein said on-line service network is an on-line payroll processing service network on the Web;
>    display a Web application on a Web page, wherein the Web application is a payroll processing services Web application;
>    execute said Web application on a Web server comprising memory and a processor;
>    display a list of services accessible for performing real-time Web transactions from said payroll processing services Web application on the Web page;
>    perform real-time Web transactions from the Web application;
>    manage the connection between the Web application displayed on a multi-media device and a Back Office of a payroll processing service provider;
>    control the flow of one or more real-time Web transactions from the payroll processing Web application; and
>    complete a payroll processing Web transaction in real-time relating to a selected

>       payroll processing service.

(D.I. 1-3).

The two-step analysis for patent eligibility under 35 U.S.C. § 101 begins with a determination of whether claim 10 of the '833 patent is directed to a patent ineligible concept. *See Alice*, 573 U.S. at 217. Laws of nature, natural phenomena, and abstract ideas are patent ineligible concepts. *See Diamond*, 450 U.S. at 185. Claim 10 is a claim to a system of processing payroll transactions using a computer which communicates over a network. *See* '833 Patent 10:42-67. The system uses a computer to display an application, execute the application over a network, and manage the connection to complete a transaction. These are basic computer functions that cannot circumvent that prohibition on patenting abstract ideas or mental processes. *See Bancorp*, 687 F.3d at 1278. Further, the computer components listed in the claim are generic and fail to recite any inventive technology for performing the basic computer functions recited. *See Elec. Power*, 830 F.3d at 1354. Performing the payroll processing system on a generic computer using routine functions cannot transform the idea into patent eligible subject matter. *See Alice*, 573 U.S. at 223. The fact that computer implementation may increase the speed or efficiency of the payroll processing is irrelevant. *See Intellectual Ventures*, 792 F.3d at 1370. As a result, the Court concludes that claim 10 of the '833 patent is directed to the abstract idea performing real-time transactions over a network for payroll processing.

Because the invention is directed to an abstract idea, the next step in the analysis is to search for an inventive concept, which are elements that would transform the claims into more than a patent on the abstract idea itself. *See Alice*, 573 U.S. at 217-18. For a computer-implemented invention, there must be elements that involve more than performance of well-known and routine activities. *See Content Extraction*, 776 F.3d at 1347-48. There are no such

elements here. The claim in question merely instructs the user to perform a payroll processing transaction on a generic computer using the computer's basic functions. Further, the claim in question does not improve or enhance the functionality of the computer itself. *See Aatrix*, 882 F.3d at 1127. In practice, the patent claims no more than the abstract process of performing real-time transactions over a network for payroll processing, which makes it ineligible subject matter under 35 U.S.C. § 101. *See Alice*, 573 U.S. at 217-18. The fact that the real-time transactions are limited to the application of payroll processing does not alter this analysis. *See Bilski*, 561 U.S. at 610.

Plaintiff has failed to provide a substantial argument to the contrary. While Plaintiff claims an "improvement in the functioning of the computer itself," she does not state how. (D.I. 100 at 18). No such improvements are discernible from the patent. Further, while Plaintiff claims that the payroll transactions are accomplished through "novel and nonobvious technological features," she does not identify any such features. (D.I. 100 at 15). All the technological features in the claim such as machine executable instructions, processors, and networks are generic computer elements which operate on all computers. No inventive technological features are present.

Plaintiff also argues that because "claim 10 recites a practical application of an alleged abstract idea rather than the abstract idea itself, the claims should be and are eligible for patentability." (D.I. 100 at 18). The fact that an idea can be used for a practical end does not render the idea patent eligible. Computer implemented schemes for the practical application of ideas such as risk hedging, intermediated settlement, using advertising as an exchange or currency, data collection, and generating tasks in an insurance organization have all been held to be patent ineligible despite having a practical application. *See OIP Technologies, Inc. v.*

6

*Amazon.com*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). Consequently, the existence of a practical application for the utilization of an abstract idea does not mean that the abstract idea becomes patent eligible.

Rather, "the relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Alice*, 573 U.S. at 224. The Court sees no reason why such payroll transactions could not be accomplished through non-computerized means. "[M]erely configuring generic computers in order to supplant and enhance an otherwise abstract manual process is precisely the sort of invention that the *Alice* Court deemed ineligible for patenting." *Credit Acceptance*, 859 F.3d at 1056. Plaintiff makes no allegation in the Complaint (D.I. 1) that claim 10 of the '833 patent does more than use basic computer functions to execute payroll transactions on a generic computer. For these reasons, I hold claim 10 to be ineligible subject matter under 35 U.S.C. § 101.

Plaintiff's complaint alleges that the Defendants are infringing "at least claim 10 of the '833 patent." (D.I. 1 at 7). Defendant's motion to dismiss treats claim 10 as representative to invalidate all claims of the '833 patent. (D.I. 98 at 7). Plaintiff's brief does not challenge this position and only argues the patentability of claim 10. (D.I. 100 at 15-20). All the claims are substantially similar and linked to the same abstract idea. Therefore, claim 10 will be treated as representative for the validity for all claims in the '833 patent for the purpose of the current motion to dismiss. *See Content Extraction*, 776 F.3d at 1348; *BroadSoft, Inc. v. CallWave Communications, LLC*, 282 F. Supp. 3d 771, 777 (D. Del. 2017), *aff'd*, 739 F. App'x 985 (Fed. Cir. 2018).

Plaintiff has not requested leave to amend her pleadings.

### IV. CONCLUSION

For the reasons set forth above, I grant Defendant's Rule 12(b)(6) motion and dismiss all claims of the '833 Patent with prejudice.

A separate order will be entered.

_/s/ Richard G. Andrews___
United States District Judge
